IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH SIMMONS,<br>    Plaintiff, | :<br>: |
| | : |
| v. | :     CIVIL ACTION NO. 21-CV-4962 |
| | : |
| NANCY GIANETTA, *et al.*,<br>    Defendants. | :<br>: |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                    **APRIL 27, 2022**

Plaintiff Joseph Simmons, proceeding *pro se*, brings this civil rights action pursuant to 42 U.S.C. § 1983 with respect to the events that occurred while he was incarcerated at Curran Fromhold Correctional Facility ("CFCF") in Philadelphia in 2020 and 2021. Currently before the Court are Simmons's Complaint (ECF No. 2), Motion for Leave to Proceed *In Forma Pauperis* (ECF No. 1), and Prisoner Trust Fund Account Statement (ECF No. 3). For the following reasons, Simmons's claims related to the events that allegedly occurred in 2020 will be dismissed in part for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and permitted to proceed in part. With respect to two separate events that allegedly occurred in 2021, the Court will sever Simmons's claims and allow him to reassert them in separate lawsuits.

**I.      FACTUAL ALLEGATIONS**[1]

Simmons, who is currently incarcerated at State Correctional Institution – Rockview, sets forth a number of factual allegations in his Complaint regarding specific events that occurred while he was incarcerated at CFCF from October of 2020 through May of 2021, all of which he

---

[1] The facts set forth in this Memorandum are taken from Simmons's Complaint and all the documents and exhibits attached thereto.

contends violated his constitutional rights. Simmons names the following Defendants in this action: CFCF Correctional Officers (1) Ventus; (2) Peters; (3) Collier; (4) Willson; (5) Jane Doe; CFCF employees (6) Lieutenant McHolland; (7) John Doe, a Disciplinary Hearing Officer; (8) Sergeant Miles; (9) Blanche Carney,[2] Commissioner of the Philadelphia Prisons Department; and (10) Nancy Giannetta, the Warden at CFCF. (Compl. ¶¶ 3-12.)[3] In general, Simmons's factual allegations concern three specific and unrelated occurrences: (1) allegations concerning an October 1, 2020 incident with Defendants Collier, Ventus, Peters, and Miles that involved the use of pepper spray and the application of physical force, and which culminated in misconduct charges, disciplinary hearings, and Simmons being sentenced to time in segregation; (2) allegations regarding a February 2021 physical and sexual assault Simmons suffered at the hands of another inmate; and (3) allegations that Simmons was deprived of food in May of 2021.

### A. October 1, 2020 Incident and Related Disciplinary Proceedings

Simmons alleges that at approximately 5:00 pm on October 1, 2020, Defendant Collier pepper sprayed Simmons in the face for allegedly disobeying a direct order to line up for the evening meal. (*Id.* ¶ 14.) "[W]ithin seconds," Defendants Ventus and Peters arrived and moved Simmons to the sally port of the pod where they proceeded to handcuff Simmons. (*Id.* ¶¶ 15-16.) Simmons alleges that after he was handcuffed, Ventus and Peters pepper sprayed him in the face. (*Id.* ¶ 16.) Simmons claims that Ventus and Peters then escorted him to an elevator and threw him against the walls multiple times on the way to the elevator. (*Id.* ¶ 17.) Simmons contends that once he was inside the elevator, Defendant Sergeant Miles arrived and helped Peters and

---

[2] Simmons misspelled Defendant Carney's name in the Complaint. The Court has adopted the proper spelling of her name for purposes of this Memorandum.

[3] Where the Court cites a page number rather than a paragraph number, the Court will adopt the pagination supplied by the CM/ECF docketing system.

Ventus throw Simmons face first into the far corner of the elevator. (*Id.* ¶ 18.) Simmons alleges that he could not breathe and told the Correctional Officers that he could not breathe before he attempted "to turn his head out of the corner of the wall." (*Id.* ¶ 19.) At that point, Simmons alleges that he was struck in the face by Ventus with a blunt hard object, causing a gash to open above his right eye, which bled profusely.[4] (*Id.*) Simmons claims that the wound above his right eye required immediate medical treatment and has caused him to suffer from severe migraines since October 1, 2020. (*Id.* ¶ 20.) After receiving medical treatment, Simmons alleges that he was placed in punitive segregation. (*Id.* ¶ 21.)

---

[4] Simmons attached a number of exhibits to his Complaint, including, but not limited to, multiple inmate grievances forms, several request forms, disciplinary hearing summary reports and appeals, misconduct reports, and various correspondence. (Compl. at 16-36.) In screening Simmons's Complaint pursuant to § 1915(e)(2)(B), the Court may properly consider all of these exhibits. *See Harris v. U.S. Marshal Serv.*, No. 10-328, 2011 WL 3607833, at *2 (W.D. Pa. Apr. 6, 2011), *report and recommendation adopted as modified*, 2011 WL 3625136 (W.D. Pa. Aug. 15, 2011) ("In addition to the complaint, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in disposing of a motion to dismiss under Rule 12(b)(6), and hence, under the screening provisions of the PLRA.") (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994)). Accordingly, the Court will refer to these exhibits as necessary throughout this Memorandum.

Among the exhibits attached to the Complaint, is a "Lock & Track Inmate Misconduct" document that describes the October 1, 2020 incident as follows:

> Simmons . . . was placed in the sallyport area . . . after being pepper sprayed by Officer Collier. [Simmons] was given several loud verbal commands to put his hands behind his back so he could [be] handcuffed and escorted to medical. [Simmons] refused to comply at which time . . . [pepper] spray was deployed to his facial area. [Simmons] was then handcuffed and escorted out of the sallyport to medical. While being escorted to medical . . . Simmons became combative multiple times and had to be placed against the wall to gain compliance. While in . . . [the] elevator . . . Simmons made several verbal threats and gestured multiple times that he was going to spit on the officers and Sgt. Miles while he [was] continuing to spit on the wall of the elevator. [Simmons] continued to make verbal threats while being escorted to medical.

(Compl. at 25.)

Following the October 1, 2020 incident, Simmons alleges that he received two misconduct write-ups arising from the altercation, which he asserts were retaliatory: (a) "[o]ne for disobeying a direct order from" Defendant Collier; and (b) one "for bio-hazard, and verbal threats" towards Defendants Miles and Ventus.[5] (*Id.* ¶¶ 22-23.) Simmons alleges that he had a disciplinary hearing on these two misconduct write-ups on October 10, 2020. (*Id.* ¶ 25.) At that hearing, Simmons asserts that Defendant John Doe, Disciplinary Hearing Officer, found him guilty on the charge of disobeying a direct order and sentenced Simmons to 10 days punitive segregation. (*Id.*) The Disciplinary Hearing Officer continued the hearing on the second charge of misconduct to allow for further investigation. (*Id.* ¶¶ 27-28.)

Simmons alleges that the Disciplinary Hearing Officer finally conducted his second disciplinary hearing on October 21, 2020, after multiple continuances. (*Id.* ¶ 31.) Simmons asserts that the Disciplinary Hearing Officer found him "guilty of bio-hazard and verbal assault and sentenced [him] to 60 days punitive segregation followed by Administrative Segregation."[6] (*Id.* ¶ 32.) Simmons claims that he was denied due process with respect to these charges (*see id.* at 5), and alleges that his disciplinary hearings were conducted without him being allowed to present evidence or witnesses for his defense. (*Id.* ¶ 26.) He further contends that his sentences for these misconducts are retaliatory and excessive. (*Id.* ¶ 33.) Simmons alleges that he filed an

---

[5] The "Lock & Track Inmate Misconduct" document attached to the Complaint details that Simmons was charged with "BIOHAZARD, DISREPECT, DISTUB, VIORULE, THREAT[.]" (*Id.* at 25.) A January 21, 2021 letter to Simmons from Defendant Carney also notes that: "[A]n institutional investigation was completed on October 01, 2020, due to you being pepper sprayed for refusing to comply with a valid order and threatening Correctional staff. . . . You were placed in pre-hearing segregation and issued two (2) inmate misconduct reports for violating rules and regulations of the Philadelphia Department of Prisons." (*Id.* at 29.)

[6] Simmons does not specify the length of time he was sentenced to spend in Administrative Segregation.

4

Inmate Disciplinary Appeal, but claims that his Appeal was never answered by Defendant Warden Nancy Giannetta.  (*Id.* ¶¶ 34-35.)

Simmons alleges that immediately upon arriving in segregation after the October 1, 2020 incident, he "requested 'access to court' to file a claim of action" based on the use of force against him and the retaliatory misconduct write-ups.  (*Id.* ¶ 23.)  He claims that his request to staff and grievances were "ignored by the Administration."  (*Id.* ¶ 24.)  Simmons also asserts that during the time he waited for his two disciplinary hearings, he requested information about the investigation of his charges, and also requested access to a law library and to contact his lawyer, "to no avail."  (*Id.* ¶ 29.)  Simmons further alleges that, during the time he was in punitive segregation he filed multiple requests "to access . . . the courts, [again] to no avail."  (*Id.* ¶ 36.)

Simmons claims that on October 26, 2020, while he was in segregation, his attorney notified him of newly discovered evidence and a new plea offer in his criminal court proceedings.  (*Id.* ¶ 37.)  Upon receiving this information from his criminal defense attorney, Simmons alleges that he "rejuv[e]nated his pleas for access to the law library to pursue a remedy in his criminal court proceeding," but that his requests were unsuccessful.  (*Id.* ¶ 38.)  Simmons asserts that he wrote directly to the Office of the Warden, and the Office of the Commissioner of the Philadelphia Department of Prisons.  (*Id.* ¶ 39.)  Simmons alleges that Defendant Carney responded twice to his inquires and promised to investigate the issues he raised but ultimately failed to do so.  (*Id.* ¶¶ 40-41.)  Simmons claims that he was then "forced to go to trial on March 5, 2021 without having access to the courts for 6 months consecutively prior to that date," which resulted in Simmons "being found guilty of his criminal court charges[.]"  (*Id.* ¶¶ 42-43.)  He also claims he was "denied the right to [a] cause of action in any civil rights violations."  (*Id.* ¶ 43.)

5

### B. February 2021 Physical and Sexual Assault by Another Inmate

Separate from his allegations regarding the October 1, 2020 incident and the related disciplinary proceedings, Simmons claims that at approximately 10:00 pm on February 22, 2021, he pressed the call button in his cell and when Defendant Willson arrived, Simmons advised Willson "that he feared for his life and felt in danger of [a] physical assault." (*Id.* ¶ 44.) Simmons alleges that Willson went back to his desk and told his supervisor of the situation and logged it in the logbook. (*Id.* ¶ 45.) Simmons asserts that he was subsequently "physical[l]y and sexually assaulted through out [sic] the night and no officer or supervisor came." (*Id.* ¶ 46.) According to Simmons, he was "finally able to get treatment for his injuries two days later and was sent to a[n] outside facility for a sprained right hand, swollen and possibly ruptured testicles, [a] human bite to [his] right cheek and a chip on [his] front tooth." (*Id.* ¶ 47.)

### C. Allegations Related to the Deprivation of Food in May 2021

Also unrelated to either the October 1, 2020 incident or the February 2021 inmate assault, Simmons claims that on May 7, 2021, while he was housed in the A-1-4 pod, Defendant Carney "came around with other officers to feed the Ramadan meal." (*Id.* ¶ 48.) Simmons alleges that before the officers got to his cell to serve the meal, inmates in another cell refused to close their tray slot, which cause Defendant Carney to deny food to the inmates housed on the pod for three days until May 10, 2021. (*Id.* ¶¶ 49-50.) Simmons asserts that he advised officers and staff on Monday, May 10, 2021 that he was suicidal because he wasn't being fed, and that he was then "sent to suicide watch for 3 days and forced to sleep naked in a cold cell." (*Id.* ¶¶ 51-52.)

Based on the allegations of the Complaint, Simmons seeks declaratory and injunctive relief, as well as compensatory damages in the amount of $300,000 and punitive damages in the amount of $200,000. (*Id.* at 13-15.)

## II.  STANDARD OF REVIEW

The Court will grant Simmons leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[7]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "At this early stage of the litigation, '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)).  Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.  As Simmons is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.  DISCUSSION

Simmons asserts claims for violations of his constitutional rights and specifically cites both the Eighth and Fourteenth Amendments.  (*See* Compl. ¶¶ 54-58.)  The vehicle by which

---

[7] 28 U.S.C. § 1915(a)(2) requires a prisoner seeking to proceed *in forma pauperis* to provide the Court with a copy of the prisoner's trust fund account statement for the six-month period preceding the filing of the filing of the Complaint.  While this case was filed on November 5, 2021, Simmons has provided an account statement that covers only the period between August 2021 and October 2021.  The Court deems this to be substantial compliance with the statute.

constitutional claims may be brought in federal court is Section 1983 of Title 42 of the United States Code, which provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). Furthermore, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

    **A.**    **Excessive Force Claims Arising from the October 1, 2020 Incident**

Simmons's Complaint seeks to bring a claim against Defendants Ventus, Peters, Collier, Miles, and McHolland for "using physical force against . . . [him] without need or provocation" and for "failing to intervene to prevent the misuse of force" which Simmons contends was "done maliciously and sadistically and constituted cruel and unusual punishment in violation of the Eighth Amendment[.]" (Compl. ¶ 54.) Although Simmons cites the Eighth Amendment in his Complaint, it is the Due Process Clause of the Fourteenth Amendment that protects pretrial

detainees like Simmons.[8] *Jacobs v. Cumberland Cty.*, 8 F.4th 187, 193-94 (3d Cir. 2021) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). In *Graham v. Connor*, the Supreme Court explained that it was "clear" that the Fourteenth Amendment protects pretrial detainees from "the use of excessive force that amounts to punishment." 490 U.S. 386, 395 n.10 (1989).

To state a due process violation based on excessive force, a detainee must allege facts to plausibly suggest "that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396-97. "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham*, 490 U.S. at 396). "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* Additionally, a fellow corrections officer or a supervisory officer is liable for a failure to intervene where a reasonable opportunity to intervene exists. *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002); *see also Bistrian v. Levi*, 696 F.3d 352, 371 (3d Cir. 2012) (applying the *Smith* standard in a case brought

---

[8] In light of the fact that Simmons is an imprisoned *pro se* litigant, the Court "remain[s] flexible" and will "apply the relevant legal principle even when the complaint has failed to name it." *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). While Simmons's Complaint cites to the Eighth Amendment, the Complaint itself and a review of public records makes clear that Simmons was a pretrial detainee at the time of the relevant events alleged in the Complaint. (*See* Compl. at 7-8); *see also Commonwealth v. Simmons*, CP-51-CR-0001195-2019 (C.P. Philadelphia).

by a pretrial detainee), *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020).

With respect to the October 1, 2020 incident, Simmons alleges Defendant Collier pepper sprayed him in the face for allegedly disobeying a direct order to line up for the evening meal, and that shortly thereafter he was handcuffed by Defendants Ventus and Peters, who also proceeded to pepper spray him in the face after he was restrained.  (*Id.* ¶¶ 14-16.)  The use of chemical agents is not a *per se* constitutional violation.  *Passmore v. Ianello*, 528 F. App'x 144, 147 (3d Cir. 2013) (per curiam); *Thorpe v. Little*, 804 F. Supp. 2d 174, 187 (D. Del. 2011) (stating "[t]he use of mace does not, in itself, amount to a constitutional violation") (citing *Banks v. Mozingo*, 423 F. App'x 123, 126–27 (3d Cir. 2011)).  Nonetheless, Simmons's allegations that he was pepper sprayed after allegedly disobeying an order and after being handcuffed are sufficient to survive initial screening because it is not known whether the corrections officers were justified in using some amount of physical force to gain compliance with their orders.  *See Thorpe*, 804 F. Supp. 2d at 187 (permitting prisoner's excessive force claim of being pepper sprayed for failing to obey an order to survive screening and proceed to service).

Simmons further alleges that Ventus and Peters then threw him against the wall multiple times on the way to the elevator, and that once inside the elevators, Ventus and Peters, joined by Defendant Miles, threw Simmons face first into the far corner of the elevator.  (*Id.* ¶¶ 17-18.)  Simmons alleges that when he tried to turn his head out of the corner in order to breathe, Ventus struck him in the face with a blunt hard object, causing a gash to open above his right eye that bled profusely and required "immediate medical treatment[.]"  (*Id.* ¶¶ 19-20.)  Accepting Simmons's factual allegations as true and drawing all reasonable inferences in Simmons's favor as the Court is required to do at this stage of the litigation, Simmons will be permitted to proceed

on his excessive force and failure to intervene claims against Defendants Collier, Ventus, Peters, and Miles because his Complaint contains sufficient factual matter to state a plausible claim for excessive force.⁹  *See Iqbal*, 556 U.S. at 678.

      **B.**      **Disciplinary Proceedings Arising from the October 1, 2020 Incident**

Simmons seeks to bring a Fourteenth Amendment Due Process claim related to the two misconduct write-ups and disciplinary proceedings he faced as result of the October 1, 2020 incident.  The United States Court of Appeals for the Third Circuit has noted that, "[g]enerally, prisons may sanction a pretrial detainee for misconduct that he commits while awaiting trial, as long as it is not a punishment for the 'underlying crime of which he stands accused.'" *Kanu v. Lindsey*, 739 F. App'x 111, 116 (3d Cir. 2018) (quoting *Rapier v. Harris*, 172 F.3d 999, 1003-06 (7th Cir. 1999)).  However, while "'pretrial detainees do not have a liberty interest in being confined in the general prison population, they do have a liberty interest in not being detained indefinitely in [disciplinary segregation] without explanation or review of their confinement.'" *Singleton v. Superintendent Camp Hill SCI*, 747 F. App'x 89, 92 (3d Cir. 2018) (per curiam) (quoting *Bistrian v. Levi*, 696 F.3d 352, 375 (3d Cir. 2012)).  With respect to pretrial detainees, "the imposition of disciplinary segregation for violation of prison rules and regulations cannot be imposed without providing . . . due process protections." *Kanu*, 739 F. App'x at 116.  Such protections "include the right to receive written notice of the charges at least 24 hours before the hearing, the opportunity to present witnesses and documentary evidence, and a written statement

---

⁹ Although the Complaint names Lieutenant McHolland as a Defendant in this action and asserts a "claim for relief" against him for excessive force (*see* Compl. ¶¶ 8, 54), Simmons does not allege that Defendant McHolland was actually personally involved in any of the events alleged in the Complaint.  Because Simmons fails to allege that Defendant McHolland had any personal involvement in the alleged violation of his constitutional rights, the claims against him will be dismissed.  *See Rode*, 845 F.2d at 1207.

11

of the reasons for the disciplinary action taken and the supporting evidence." *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974)); *see also Stevenson v. Carroll,* 495 F.3d 62, 70 (3d Cir. 2007).

"[D]etention officials' restrictions on pretrial detainees will constitute punishment prohibited by the Due Process Clause when: (1) 'there is a showing of express intent to punish on the part of [those] [ ] officials'; (2) 'the restriction or condition is not rationally related to a legitimate non-punitive government purpose,' i.e., 'if it is arbitrary or purposeless'; or (3) 'the restriction is excessive in light of that purpose.'" *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017) (quoting *Stevenson v. Carroll*, 495 F.3d 62, 67-68 (3d Cir. 2007)) (alterations in original). "[M]aintaining internal security and order in jails and prisons are 'legitimate governmental objectives'" that may justify placement of a detainee in administrative segregation, and "courts must give prison officials considerable discretion to manage internal security in their institutions." *Id.* In other words, if officials can articulate a legitimate managerial concern for placement of the detainee in restricted housing, a substantive due process claim is foreclosed. *Stevenson*, 495 F.3d at 69 ("Although the substantive and procedural due process evaluations are distinct, a showing by the prison officials that a restrictive housing assignment is predicated on a legitimate managerial concern and is therefore not arbitrary or purposeless, will typically foreclose the substantive due process inquiry.").

Simmons claims that his due process rights were violated with respect to the two misconducts and the two separate disciplinary hearings arising from the October 1, 2020 incident. Based on the allegations of the Complaint and the Lock & Track Inmate Misconduct document attached thereto, it appears that Simmons received written notice of the charges against him on or about October 1, 2020, the date of the incident, prior to him being placed in

segregation and well in advance of his disciplinary hearings, which occurred on October 10, 2020 and October 21, 2020.  (*See* Compl. ¶¶ 22-23, 25, 27-28, 31; *see also id.* at 25.)  However, Simmons alleges that these hearings were conducted without giving him the opportunity to present evidence or call witnesses for his defense.  (*Id.* ¶ 26.)  Accepting Simmons allegations as true and drawing all reasonable inferences in his favor, Simmons has sufficiently alleged a plausible due process claim and the Court will permit that claim to proceed to service on Defendant John Doe Disciplinary Hearing Officer.

        **C.**     **Claims Against Defendant Jane Doe Related to Filing of Grievances**

Simmons alleges that Defendant Jane Doe, the Grievance Screening Officer, "received all of [his] griev[a]nces and his Inmate Disciplinary Appeal yet there is no Records of Defendant filing these griev[a]nces for" Simmons.  (Compl. ¶ 30.)  Based on this sole allegation against her, Simmons claims that Defendant Jane Doe "was deliberately negligent violating . . . [his] due process of law in violation of the Fourteenth Amendment[.]"  (*Id.* ¶ 57.)  Construed liberally, it appears that Simmons may be attempting to bring a constitutional claim related to grievances and inmate request forms he completed and how they were subsequently processed, ignored, disregarded, or otherwise handled.  Any such claim, however, fails because "[p]rison inmates do not have a constitutionally protected right to a grievance process."[10]  *Jackson v. Gordon*, 145 F. App'x 774, 777 (3d Cir. 2005) (per curiam); *see also Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009) (per curiam).  Accordingly, the facts alleged by Simmons regarding grievances do

---

[10]  To the extent Simmons's Complaint could be construed to allege such a claim regarding his ability to file grievances or access the grievance process against any other Defendants, that claim also fails for the same reason.

13

not give rise to a plausible basis for a constitutional claim and will be dismissed with prejudice as amendment would be futile.

D.     **Claims for Denial of Access to the Courts**

Following the October 1, 2020 incident, Simmons was placed in pre-hearing segregation (*see* Compl. at 29), and was later sentenced to ten (10) days and sixty (60) days, respectively for the first and second misconducts, followed by time in administrative segregation.  (*Id.* ¶¶ 25, 32.) He claims that throughout the time he was in segregation he made repeated requests for "access to courts" by way of grievances, inmate request forms, and correspondence, all of which were ignored or denied by the administration at CFCF.  (*See, e.g.*, *id.* ¶¶ 23-24, 29-30, 34-43.) Simmons appears to specifically challenge his lack of "access to the law library to pursue a remedy in his criminal court proceedings," and he focuses on the fact that he "was forced to go to trial on March 5, 2021 without having access to the courts for 6 months consecutively prior to that date."  (*Id.* ¶¶ 38, 42.)  He further alleges that Defendants Giannetta and Carney's "actions and inaction in handling [his] Request[s] and Grievances for court access . . . denied" Simmons "his Fourteenth Amendment Right to due process of law[.]"  (*Id.* ¶ 58.)

The Court understands Simmons's allegations about his lack of access to the courts, and specifically his lack of access to the law library, as his attempt to rise an access to the courts claim.[11]  *See Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (recognizing that a claim asserting restrictions on access to the prison law library is considered as an "access-to-the-

---

[11] With respect to this claim, Simmons relies solely on the Due Process Clause of the Fourteenth Amendment.  (*See* Compl. ¶¶ 58.)  To be clear, however, "prisoners retain a right of access to the courts" under the First and Fourteenth Amendments.  *See Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008); *see also Niblack v. Robinson*, No. 10-223, 2011 WL 830272, at *4 (D.N.J. Mar. 7, 2011) ("Courts have recognized different constitutional sources for the right of access to the courts.  Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.")

courts" claim under the First Amendment). "A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)); *see also Tinsley v. Giorla*, 369 F. App'x 378, 381 (3d Cir. 2010) (a pretrial detainee "making an access to courts claim is required to show that the denial of access caused actual injury."). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz*, 532 F. App'x at 63 (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Christopher*, 536 U.S. at 415. "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id*. Furthermore, the right to access the courts may be satisfied if the plaintiff has an attorney. *Diaz*, 532 F. App'x at 63 (citing *Bounds v. Smith*, 430 U.S. 817, 831 (1977) and *Peterkin v. Jeffes*, 855 F.2d 1021, 1042 (3d Cir. 1988)); *see also Prater v. City of Phila.*, 542 F. App'x 135, 137 n.4 (3d Cir. 2013) (per curiam).

Simmons has not stated a plausible claim for denial of access to the courts. Initially, Simmons has not identified a non-frivolous challenge to his underlying criminal prosecution that he was unable to pursue because he was denied access to the law library while he was in

15

segregation.[12] Accordingly, he has not satisfied the pleading standard because it is not clear that he has been prevented from pursing any nonfrivolous claims in that proceeding as a result of Defendants' actions. Even if he had made specific allegations on that issue, the public docket for Simmons's criminal proceedings reflects that he was represented by counsel for the entirety of his criminal proceedings, including his March 2021 trial. *Commonwealth v. Simmons*, CP-51-CR-0001195-2019 (C.P. Philadelphia). Simmons also specifically acknowledges in the Complaint that he was represented by counsel in the criminal proceedings. (*See* Compl. ¶ 37) ("Around October 26, 2020 Plaintiff's attorney notified Plaintiff of newly discovered evidence and a new plea offer in his criminal court proceedings.") Despite Simmons's continued assertion that he was unable access the law library and the courts in advance of his criminal trial, his right to access the courts was satisfied by way of representation by his criminal attorney. Accordingly, Simmons claim that he was denied access to the courts is not plausible and will be dismissed with prejudice as any attempt at amendment would be futile.

E.   **Simmons's Request for Declaratory Relief**

Simmons seeks a declaratory judgment stating that Defendants' actions violated his constitutional rights based on the events that occurred in 2020 and 2021. This request for relief is improper and will be dismissed with prejudice. Declaratory relief is unavailable to adjudicate past conduct. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (per curiam)

---

[12] The precise contours of Simmons's access to the courts claim are unclear. It appears that Simmons's time in segregation concluded, at the latest, on or about December 20, 2020. At the same time, Simmons represents that he was "forced to go to trial on March 5, 2021 without having access to the courts for 6 months consecutively prior to that date." (Compl. ¶ 42.) The facts alleged in the Complaint, then, suggest there was a period of well over two months prior to trial during which time Simmons was not in segregation. However, the Court need not resolve this inconsistency in light of the fact that Simmons was represented by counsel during his criminal proceedings.

("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (per curiam) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."). A declaratory judgment is also not "meant simply to proclaim that one party is liable to another." *Corliss*, 200 F. App'x at 84 (per curiam); *see also Taggart v. Saltz*, No. 20-3574, 2021 WL 1191628, at *2 (3d Cir. Mar. 30, 2021) (per curiam) ("A declaratory judgment is available to define the legal rights of the parties, not to adjudicate past conduct where there is no threat of continuing harm.").

      F.      **Misjoinder of Claims**

Federal Rule of Civil Procedure 20 allows a plaintiff to join multiple defendants in one action if: (a) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (b) "any question of law or fact common to all defendants will arise in the action."  "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)).

"But this application, however liberal, is not a license to join unrelated claims and defendants in one lawsuit." *McKinney v. Prosecutor's Office*, No. 13-2553, 2014 WL 2574414, at *14 (D.N.J. June 4, 2014) (internal quotations omitted).  "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  Indeed, "[t]he

17

courts[] . . . have frowned on prisoners' attempts to lump together their multifarious grievances about life in a single prison, let alone multiple prisons." *McKinney*, 2014 WL 2574414, at *15. To remedy a misjoinder, a Court may add or drop a party or sever any claims. Fed. R. Civ. P. 21. "A district court has broad discretion in deciding whether to sever a party pursuant to Federal Rule of Civil Procedure 21." *Boyer v. Johnson Matthey, Inc.*, No. 02-8382, 2004 WL 835082, at *1 (E.D. Pa. Apr. 16, 2004).

As the Court explained at the outset, the factual allegations of Simmons's Complaint can be broken down into essentially three distinct sets of events: (1) the October 1, 2020 physical altercation with Defendants Collier, Ventus, Peters, and Miles involving the use of pepper spray and disciplinary proceedings stemming from that event; (2) the February 2021 physical and sexual assault Simmons suffered at the hands of another inmate alleged against Defendant Willson; and (3) the May 2021 food deprivation by Defendant Carney. The events of October 1, 2020, February 2021, and May 2021 are distinct in time, name distinct Defendants, and raise distinct legal issues. Even giving the Complaint the most liberal construction, it cannot be said that the events of October 1, 2020, February 2021, or May 2021 arise out of the same transaction, occurrence, or series of transactions or occurrences.

Accordingly, the Court will sever any claims arising from both the events of February 2021 or May 2021 from the instant lawsuit and direct the Clerk of Court to docket the Complaint in two new civil actions. If Simmons seeks to proceed on the claims arising from the events of February 2021 or May 2021, he will be obligated to either pay the required filing fees in each

respective new action or seek leave to proceed *in forma pauperis* in each respective new civil action.[13]

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Simmons leave to proceed *in forma pauperis*. Simmons's Fourteenth Amendment claims for excessive force, failure to intervene, and denial of due process brought pursuant to § 1983 and arising from the October 1, 2020 incident and the subsequent disciplinary proceedings will be permitted to proceed. The Court will direct service of the Complaint along with a copy of this Memorandum and the accompanying Order on Defendants Collier, Ventus, Peters, Miles, and John Doe Disciplinary Hearing Officer. All other § 1983 claims related to the October 1, 2020 incident are dismissed with prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). With respect to the two separate events that occurred in February and May of 2021, the Court will sever Simmons's claims and allow him to reassert these claims in two separate lawsuits. An appropriate Order follows.

                                            **BY THE COURT:**

                                            */s/ John M. Gallagher*
                                            **JOHN M. GALLAGHER, J.**

---

[13] If Simmons is granted leave to proceed *in forma pauperis* in each of those two new lawsuits, he will be obligated to pay another filing fee in installments pursuant to 28 U.S.C. § 1915(b) in each separate action and his claims will be subject to screening under § 1915(e)(2)(B) in both cases. *See Sanders v. Rose*, 576 F. App'x 91, 94 (3d Cir. 2014) (per curiam) ("We further agree with the District Court that allowing a prisoner to include a host of separate, independent claims, would circumvent the filing fee requirements of the PLRA." (quotations and alterations omitted)).